UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | Crim. No. 07-291(RBW) |
| v. | ) ) ) |  |
| KAREN TIMBERLAKE | ) ) ) |  |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Karen Timberlake, through undersigned counsel, respectfully submits her Memorandum in Aid of Sentencing.

**Procedural History**

Ms. Timberlake will appear before the Court on Friday, April 18, 2008 for her sentencing hearing. On August 7, 2007, Ms. Timberlake entered a guilty plea to a one count information that charged her with Theft of Government Property in violation of 18 U.S.C. § 641. Pursuant to the conviction Ms. Timberlake faces a maximum sentence of ten years of incarceration, followed by a term of supervised release of not more than three years, a maximum fine of $250,000.00 dollars and a $100.00 dollar special assessment.

Probation Officer Kelli Griffin Cave, calculated a sentencing range of 0-6 months of incarceration pursuant to the advisory United States Sentencing Guidelines. The range is based on a Base Offense level 8 and a Criminal History Category I. Because Ms. Timberlake's guideline falls within Zone B of the Sentencing Guidelines she is eligible for a period of probation not to exceed five years. See PSR ¶ 65

## ARGUMENT IN SUPPORT FOR A SENTENCE OF PROBATION

**Personal History and Background**

Ms. Timberlake is before the Court facing her second criminal conviction. Prior to the instant offense Ms. Timberlake was charged with a check fraud offense and placed on diversionary program, more commonly known as a "Stet Docket". It appears that Ms. Timberlake's post offense conduct in the "Stet Docket" case was resolved favorably. With the exception of the instant charge and the Charles County stet docket, Ms. Timberlake has never been arrested or charged with any other criminal act. The two offenses are anomalous in an otherwise exemplary life of law abiding conduct and verified work history. The two incidents are all the more surprising since they took place in her forties, well into Ms. Timberlake's adulthood. Thus, her appearance in a sentencing hearing will be an errant departure from the principles and values that she generally followed throughout her adult life.

There is no simple or defensible explanation for Ms. Timberlake's conduct. However, Ms. Timberlake did not use the embezzled money to indulge in material possessions. There is nothing in her residence that points to an extravagant lifestyle or the accumulation of material objects beyond her means. Although, she was making a decent salary, as a single mother Ms. Timberlake struggled with living and budgeting within her means.

As detailed in the Statement of Offense Ms. Timberlakes's illegal conduct took place between January 2003 and October 2006. Thus, for approximately five years she was a responsible and law-abiding employee of the Department of Housing and Urban Development. Moreover, there is no indication that from the time she was hired in May 1998 until January 2003 that she stole from her employer. Although she has brought about a great deal of shame to

herself, Ms. Timberlake has the capacity and fortitude to put her life back together. By no means has the shame diminished her commitment to be gainfully employed in order to care for her children, which is her paramount responsibility. An important step in turning her life around was her resolve to plea guilty to her wrongful conduct. Her decision was based on the simple fact that she had abused her employer's trust by illegally receiving money for hours that she had not worked. Ms. Timberlake never thought of challenging the allegation since it would have been misleading and dishonest to do so. She recognized that it was her dishonesty that resulted in her legal predicament.

Ms. Timberlake wants to prove to the Court, to her family, and the government that she can contribute to her community and live out the remainder of her adult life in a lawful manner. Ms. Timberlake is asking the Court for leniency so that she may continued to be gainfully employed, pay back the money that she owes and continue the rehabilitation process. Equally important Ms. Timberlake wants the opportunity to demonstrate a commitment to responsible and law abiding behavior. On account of the totality and circumstance of her life and pursuant to the applicable sentencing statutes, Ms. Timberlake respectfully requests that the Court sentence her to a period of probation.

A.  **PURSUANT TO 18 U.S.C. § § §§ 3553(a), 3582, 3562, 28 § 991(b)(1)(B) AND THE UNITED STATES SENTENCING GUIDELINES A SENTENCE OF PROBATION WOULD CONSTITUTE A REASONABLE AND APPROPRIATE SENTENCE**

In <u>United States v. Booker</u>, the Supreme Court held that the mandatory sentencing guidelines were unconstitutional as applied. 125 S. Ct. 738 (2005)  The Court further held that judges are required to "take account of the Guidelines <u>together</u> <u>with</u> other sentencing factors," and to "consider" the guidelines along with all the other required factors (emphasis added).

The Court is not bound by the guideline range and there is no requirement that a sentence be within the guideline range. Under Booker The guideline range is just one factor to be considered along with the mandatory statutory factors delineated in 18 U.S.C. § 3553(a).

Those factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with the needed educational or vocational training, and pertinent policy statements issued by the sentencing commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants. U.S. v. Clifton Price 409 F.3d 436, 442 (D.C. Cir. 2005) Moreover, Sentencing Courts have a continuing duty to "[w]eigh the purposes of sentencing listed in the Sentencing Reform Act." U.S. v. Jabber 362 F.Supp.2d 365, 369 (D. Mass. 2005).

In two recent cases, Gall v. United States, 128 S. Ct. 586 (2007) and Kimbrough v. United States, 128 S. Ct. 558 (2007), the Supreme Court reiterated its holding in Booker that the Guidelines are advisory only, noting that while the Guidelines may be a place to start, they "are not the only consideration" for a judge in determining a sentence. Gall, 128 S. Ct. at 596. Consistent with 28 § 991(b)(1)(B) Ms. Timberlake is entitled to "an individualized assessment based on the facts presented," which requires a review of additional statutory factors. Gall, 128 S.Ct. at 597.

The primary purpose of the sentencing statute, 18 U.S.C. 3553(a), is for the sentencing court to impose a sufficient sentence, but not one that is greater than necessary. 18 U.S.C. § 3553(a) allows the Court to take into account the particularized factors of Ms. Timberlake's life and not just the fact of her criminal conduct. This approach is consistent with the goals of 28 U.S.C § 991, the enabling statute of the Sentencing Commission. The enabling statute and the

sentencing statue contemplate a flexible and particularized approach to sentencing determinations.

28 U.S.C. § 991(b)(1)(B) provides Sentencing Courts with discretion to "maint[ain] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices." Application of 18 U.S.C. § 3553(a) along with the flexibility encouraged by 28 U.S.C. § 991(b)(1)(B) strongly suggests that a sentence of probation accomplishes the goals of the two statutes.

### The Nature and Circumstances of the Offense

Ms. Timberlake's nonviolent criminal conduct took place when she was having a difficult time paying for all her personal and family expenses. Although, Ms. Timberlake was earning a decent salary, she was consistently falling behind on her bills and struggling living paycheck to paycheck. The modest salary that she earned in the face of mounting bills caused her to act in a way that was inconsistent with her values and principles. What began as the theft of modest amounts of money in 2003 and 2004 mushroomed into substantial sums of money. To her credit, Ms. Timberlake never denied her criminal responsibility nor minimized her conduct.

### History and Characteristics of Ms. Timberlake

Ms. Timberlake is a motivated and capable person. Despite a difficult childhood including her parents separation, and her mothers' favoritism towards her other children, Ms. Timberlake persevered and graduate from high school. Currently, she is gainfully employed by the Department of Housing and Urban Development. However, it is uncertain whether she will be able to keep her job after she is sentenced. With the exception of the instant offense and the

5

Maryland check fraud case, Ms. Timberlake has led a productive and law abiding life.  Ms. Timberlake's efforts to lead a productive life, extends professionally and personally. Ms. Timberlake's professional life can be characterized by hard work, and the commitment to provide for her children.  Although, Ms. Timberlake brought about her current predicament, she has managed to remain positive about her future.

### The Sentence should reflect the Seriousness of the Offense

Ms. Timberlake recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment.   While the sentence must provide deterrence and protect the public, it must also provide Ms. Timberlake with educational and vocational training and medical care.  In balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2)[§ 3553]." See 18 U.S.C. § 3553(a).

A sentence that places Ms. Timberlake on community supervision and restricts her to home confinement for the first six months of probation would be more than adequate to meet the sentencing purposes set forth in 18 U.S.C. § 3553(2)(a).  The felony conviction on its own will have employment and voting consequences for the rest of her life.  Probation will require a sustained commitment to responsible behavior.

Immediately after she was confronted with the criminal allegation, Ms. Timberlake recognized the seriousness of her crime and admitted her culpability.  When Ms. Timberlake met with counsel, she did not hesitate in expressing her remorse for a committing a crime against an employer who by all means had treated her fairly.  Incarceration as opposed to probation would

be a sentence that is "greater than necessary." Incarceration will certainly cause Ms. Timberlake substantial suffering. Beyond her removal from the community Ms. Timberlake will lose custody of her teenage son, and its very likely that her daughter's behavior may take a turn for the worse. This would be a terrible outcome for a capable and hardworking woman who up until she began embezzling from her employer had led an exemplary personal and professional life.

### The sentence should afford adequate deterrence to criminal conduct

A sentence of probation will more than adequately protect the public and achieve adequate deterrence for the following reasons. First, Ms. Timberlake has generally demonstrated sound decision making skills. She has been a responsible parent and has never neglected her children. Her parental history demonstrate that she can entrusted with a set of Court imposed requirements. While on probation she he will be subjected to a strict supervision regimen which will include reporting to a probation officer, submitting monthly financial reports, making mandatory restitution payments. In the event that she wants to change jobs or move or even travel outside of Washington, D.C. she will be required to report those changes to her probation officer.

Ms. Timberlake has been shamed by her conduct. Knowing that she will never be able to erase her felony conviction has been extremely painful, humiliating and brought about endless self deprecation. As the Probation Officer indicated in the PSR, Ms. Timberlake has yet to inform her family of her criminal case. On a practical level, the felony conviction will automatically preclude Ms. Timberlake from being hired for a position in finance. The felony conviction is certain to scare away any finance or business oriented company that would under different circumstances would consider hiring her.

Her obligation to pay $27,048. dollars in restitution requires significant responsibility, planning and the commitment to lead a modest life. All of these factors will weigh heavy in her everyday life. By no means would this structure of obligations and responsibilities be a mere slap on the wrist. It can be reasonably assumed that recidivism for Ms. Timberlake is unlikely and the terms and requirements of probation should adequately protect the public.

**The sentence should provide the most effective rehabilitation treatment**

A sentence of probation would most effectively result in Ms. Timberlake's rehabilitation. If placed on probation Ms. Timberlake can continue the progress she has thus far demonstrated while she has been under court supervision. A sentence of probation will allow her to immediately begin her restitution payments. Any period of incarceration will undermine the post offense rehabilitation that has already taken place. It will also make it more difficult for her to obtain new employment which will dramatically affect her ability to care for her children and she will be hard pressed to make restitution payments after leaving prison.

As the Pre-Sentence Investigation Report indicates, Ms. Timberlake has pled guilty to a Class C felony. See PSR¶ 58. 18 U.S.C. §3561 allows for a sentence of probation for a period not to exceed five years.§ 3561(c)(1). 18 U.S.C. §3562 authorizes the Court with the discretion to impose a sentence of probation when appropriate. 18 U.S.C. §3561(a) directs the Court to impose a sentence of probation only after a consideration of "the factors set forth in section 3553(a) to the extent that they are applicable." A sentence of probation is appropriate in the instant case. Ms. Timberlake's history, the content of her person, the respect that she has shown for the law during the pendency of her case and her commitment to her children support continuing her rehabilitation in the community.

A sentence of probation, which includes mandatory restitution, community service and home confinement, along with the life long consequences of a felony conviction can be "just punishment" when the Court considers 18 U.S.C.§3582(a). In pertinent part 18 U.S.C. § 3582 (a) states

> "The Court, in determining whether to impose a term of imprisonment, and if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) **to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation**" (emphasis added)

## **CONCLUSION**

Ms. Timberlake is a decent and well meaning woman who made a series of terrible decisions. Those decisions have cost her dearly. Ms. Timberlake now has a felony conviction on her record which will have consequences for the remainder of her life. Ms. Timberlake, knows that she cannot undo her mistake. She does know that she will never engage in any activity that will put her livelihood in jeopardy. In the context of Ms. Timberlake's character and background it is safe to assume that it is very unlikely that she will re-engage in any criminal conduct. In view of her pre-2003 employment history with the Department of Housing and Urban Development, Ms. Timberlake does have the capacity to be a loyal and productive employee.

Ms. Timberlake wants one opportunity to demonstrate that she will continue to lead an exemplary life that is characterized by honesty, hard work and responsibility to her community and children. For these reasons undersigned requests that the Court sentence Ms. Karen Timberlake to a period of probation.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500